IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

BARRY MICHAEL PRATT, JR.                                                                    PLAINTIFF

v.                              Civil No. 1:22-cv-01025-BAB

CAPTAIN RICHARD MITCHAM,
Union County Detention Center                                                              DEFENDANT

**MEMORANDUM OPINION**

This is a civil rights action filed by the Plaintiff Barry Michael Pratt, Jr. ("Pratt") pursuant to 42 U.S.C. § 1983. On November 9, 2022, the parties consented to have the undersigned conduct all proceedings in this case including a jury or nonjury trial and to order the entry of final judgment in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (ECF No. 30).

Before the Court is a Motion for Summary Judgment filed by Captain Mitcham. (ECF Nos. 39-41). Pratt responded by filing a Motion to Proceed to Trial, a brief in support, and a supplement. (ECF No. 43 & 46-47). Captain Mitcham filed a reply brief. (ECF No. 44). The Motion is ready for decision.

**I.   FACTUAL BACKGROUND**

Pratt's claims arose while he was detained at the Union County Detention Center ("UCDC"). (ECF No. 8 at 4). He has sued Captain Mitcham in both his individual and his official capacities. *Id.* at 5. Pratt's first claim is that he was deprived of the right to have private conversations with his attorney. (ECF No. 41-1 at 8). Pratt had pending criminal charges at the time and he was speaking to his attorney about the criminal case. *Id.* at 10. At the time, Pratt and his attorney were separated by glass and had to speak to each other over telephone receivers. *Id.* at 8-9. The parties were advised when they first picked up the receiver that all calls were subject to recording and monitoring. *Id.* at

1

9. There were also cameras on both sides of the room. *Id.* Pratt cannot be one hundred percent sure that the calls were actually being monitored or recorded. *Id.* at 10. However, on one occasion, his attorney told him: "Don't say anything over the phone because it's being recorded." *Id.* at 17. Pratt indicated his attorney would testify to that fact. *Id.*

Pratt's second claim is that the hotline number for the Prison Rape Elimination Act ("PREA") did not work. (ECF No. 41-1 at 10-11). Pratt is unsure if the number not working was the fault of the company operating the telephones within the jail or Union County. *Id.* at 11.

Pratt's third claim is related to the grievance procedure. In this regard, Pratt says he submitted an appeal about Captain Mitcham locking him down in segregation even though the disciplinary sanction he received was only for a 30-day tablet restriction. (ECF No. 41-1 at 19). Pratt also complains that Captain Mitcham answered all grievances including the ones written against him. *Id.* at 26-27. In Pratt's mind this is "like the judge presiding over his own case." *Id.* at 27. Pratt believes grievances against Captain Mitcham should be dealt with by other jail personnel. *Id.* Instead, Pratt testified Captain Mitcham says he "can do whatever [he] want[s] to do." *Id.* at 30. Pratt testified that there is no way to take any complaints or grievances "over [Captain Mitcham's] head." (ECF No. 41-3 at 28).

Pratt's final claim is regarding Captain Mitcham locking him up for grievance abuse instead of just restricting his tablet access for thirty days which was the disciplinary sanction he was given. (ECF No. 41-1 at 8). On March 15, 2021, Pratt was notified of the disciplinary violation for grievance abuse, moved to administrative segregation, and had a hearing within 72-hours. *Id.* at 19 & 23. Pratt was taken to the disciplinary hearing on March 18th at 5:00 am in the morning. *Id.* at 23. At that time of day, the kiosk is not on. *Id.* at 19. Because the kiosk was off, Pratt states he had no way to defend himself. *Id.* Pratt attempted to explain this to Lieutenant Perry who responded that "Captain Mitcham already told me to give you 30 days." *Id.* Pratt was given 30-days tablet restriction for the

2

disciplinary violation. *Id.* at 20. However, Pratt testified he was guilty of grievance abuse—the use of foul language. *Id.* at 24.

Pratt was not moved from lock-down in segregation and objected saying he had only been given 30-days tablet restriction. (ECF No. 41-1 at 20). After he complained, Pratt states he was brought another copy of the disciplinary ruling that says he had "30 days tablet restriction, 30 days in the hole." *Id.* Pratt testified he still has the original disciplinary ruling which only stated he was given 30-days tablet restriction—a minor disciplinary. *Id.* Pratt defined the "hole" as a one-man cell in which you are locked down for 22 hours of the day and allowed access to the day-room for 2 hours a day. *Id.* at 21. Pratt says he remained in the hole for 34 days. *Id.* In the other cells, the inmates are locked down at 10:30 at night and then released at the 4:30 am breakfast. *Id.* The remainder of the day inmates were allowed to go in and out of their cells and the day-room. *Id.*

By affidavit [1] Captain Mitcham indicates he was the UCDC jail administrator for years including all times relevant to this case. (ECF No. 51 at 1). Captain Mitcham asserts that the "phones in the attorney conference rooms, where the inmates met with their lawyers, were not audio recorded." *Id.* Captain Mitcham acknowledges that when the receivers were picked up the users were advised the conversation was being recorded. *Id.* According to Captain Mitcham, the statement was part of the vendor's system, but it was incorrect with respect to attorney conference room phones. *Id.* The video cameras were placed in the rooms for the safety of attorneys and did not record audio. *Id.*

With respect to the PREA hotline, Captain Mitcham reports it "was deactivated at some point by the federal government." (ECF No. 51 at 1). After that, no one could call the PREA hotline. *Id.*

With respect to the grievance process, Captain Mitcham states:

> Plaintiff Barry Pratt regularly abused the grievance process, frequently (sometimes as much as 8 or 10 times per day or more) sending non-serious "grievances" that

---

[1] Captain Mitcham's original affidavit was submitted in the wrong case. (ECF No. 41-2). After inquiry by court personnel, the correct affidavit was filed on July 26, 2023. (ECF No. 51).

> complained about nothing (e.g., asking me to go fishing, telling irrelevant stories, etc). I personally warned him—any number of times over a period of weeks—about these abuses and the consequences that would come if he continued down that road. He ignored my instructions and continued, so he was placed in administrative lockdown pending a hearing. A day or two later, he was given 30 days of tablet restriction. The only way to effectuate that consequence, in light of the wide use of tablets in general population, was to segregate him, which we did for a month.

(ECF No. 51 at 2).

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999). A fact is "material" if it may "affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.  DISCUSSION

Captain Mitcham has moved for summary judgment on merits of each claim.  He also maintains he is entitled to qualified immunity on each claim.[2]  Captain Mitcham presents the following arguments:  (1) the telephone calls between Pratt and his attorney were not recorded despite the message being given; (2) the PREA hotline was discontinued by the federal government and in any event no constitutional claim is stated; (3) there is no constitutional right for a grievance procedure or for failure to comply with a grievance procedure; and (4) Pratt was given notice and a hearing prior to being assigned to segregation for 30-days.

### A.  Attorney-Client Communications

The Sixth Amendment guarantees an accused the right to the assistance of counsel.  U.S. Const. amend. VI; *United States v. Morrison,* 449 U.S. 361, 364 (1981).  "One threat to the effective assistance of counsel posed by government interception of attorney-client communications lies in the inhibition of free exchanges between defendant and counsel because of the fear of being overheard." *Weatherford v. Bursey,* 429 U.S. 545, 554 n.4 (1977); *see also Mastrian v. McManus,* 544 F.2d 813, 820-21 (8th Cir. 1977)("an accused does not enjoy the effective aid of counsel if he is denied the right to have private conversations with him").  "The law is clear that an incarcerated individual does have an expectation of privacy in their communications with their attorneys." *Kurtenbach v. Securus Technologies,* 2022 WL 889155, *3 (D.S.D. March 25, 2022).

To succeed on a § 1983 claim based on a violation of the Sixth Amendment, Pratt must demonstrate that there was an intrusion into the attorney-client communication and that he suffered some prejudice as a result. *Weatherford,* 429 U.S. at 558.  In *Weatherford,* the Court found the proof fell short of making out a § 1983 claim based on a Sixth Amendment violation where there was "no

---

[2] Captain Mitcham does not separately address the official capacity claims.

tainted evidence in [the] case, no communication of defense strategy to the prosecution, and no purposeful intrusion" on the attorney-client meetings.  *Id.*

Captain Mitcham by affidavit asserts that the calls were not recorded despite the message. Here, Pratt has indicated he has no proof that the conversations were recorded other than the statement being made when the receivers were engaged and on one occasion his attorney warning him not to say anything because the call was being recorded.  Thus, whether or not the calls were in fact recorded, there was an intrusion or chilling effect on the attorney-client communications on at least one occasion. Despite this, Pratt's claim fails because he has advanced nothing suggesting he suffered any injury.

Captain Mitcham is therefore entitled to summary judgment on this claim.  Having found no constitutional claim exists, Captain Mitcham is also entitled to qualified immunity on the individual capacity claim against him, *Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009) (unless the facts make out a violation of a constitutional right the Defendant is entitled to qualified immunity), and the official capacity claim against him, *Ivey v. Audrain Cty., Mo.*, 968 F.3d 845, 851 (8th Cir. 2020) (if the individual officers are entitled to qualified immunity under the first prong of the analysis, *i.e.*, no evidence of a constitutional violation, then the county cannot be held liable).

**B. PREA Hotline**

Pratt's claim regarding the PREA hotline fails because there is no private cause of action under PREA.  *See e.g., Johnson v. Garrison,* 859 F. App'x 863, 864 (10th Cir. 2021); *Bowens v. Wetzel,* 674 F. App'x 133, 137 (3d Cir. 2017); *Krieg v. Steele*, 599 F. App'x 213, 232-33 (5th Cir. 2015); *Wilmoth v. Sharp*, No. 6:15-cv-06057, 2018 WL 1092031, *3 (W.D. Ark. Feb. 27, 2018).  This fact does not mean that the conduct sought to be addressed by PREA cannot form the basis of a claim (*e.g.,* failure to protect) under § 1983.  However, in this case, Pratt admits no sexual assault occurred.

Captain Mitcham is entitled to summary judgment on this claim in both his individual and official capacities.

### C. Grievance Procedure

Inmates retain a First Amendment right to access the courts and to petition the government for redress of grievances. *Bounds v. Smith,* 430 U.S. 817, 821-33 (1977). Inmates are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Id.* at 825.

A prison grievance procedure is a procedural right and not a substantive constitutional right. *Buckley v. Barlow,* 997 F.2d 494, 495 (8th Cir. 1993)(per curiam). Nevertheless, inmates have a constitutionally protected right to file grievances. *Sprouse v. Babcock,* 870 F.2d 450, 452 (8th Cir. 1989)(First Amendment right to petition for redress of grievances includes redress under established prison grievance procedures). Prisoners may not be retaliated against for exercising their First Amendment rights to file grievances. *Id.* ("the filing of a disciplinary charge against [an inmate], although not otherwise actionable under section 1983, is actionable under section 1983 if done in retaliation for his having filed a grievance pursuant to established procedures"). However, a retaliation claim is precluded if the alleged retaliatory punishment is for the actual violation of a prison rule. *Earnest v. Courtney,* 64 F.3d 365, 367 (8th Cir. 1995). In this case, Pratt admits he violated prison rules by using foul language in his grievances. Any retaliation claim he may have been attempting to pursue therefore fails.

"[V]iolations of its procedures do not deprive prisoners of federal constitutional rights. Therefore, a state's failure to follow its grievances procedures does not give rise to a § 1983 claim." *Spencer v. Moore,* 638 F. Supp. 315, 316 (E.D. Mo. 1986); *see also Buckley*, 997 F.3d at 495 (a prison official's failure to process an inmate's grievance in accordance with internal regulations, without more, is not actionable under § 1983); *Flick v. Alba,* 932 F.2d 728, 729 (8th Cir. 1991) (per curiam) (grievance procedures "do not in and of themselves create a liberty interest in access to that procedure, the prisoners right to petition the government for redress is the right of access to the courts, which is

not compromised by the prison's refusal to entertain his grievance").

Captain Mitcham is entitled to summary judgment on this claim in both his individual and official capacities.

### D. Placement in Administrative Segregation

It is well settled that Defendants may not punish Pratt, a pre-trial detainee, without first providing him with due process. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Pretrial detainees are presumed innocent and cannot be punished for the crime for which they have been charged. *Id.*, 441 U.S. at 535-37. "[T]he effective management of the detention facility once the individual is confined is a valid objective that may justify the imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment." *Id.* at 540. Conditions or restrictions that are "reasonably related to a legitimate governmental objective" such as institutional order and security do not amount to punishment. *Id.* at 539-40; *see also Brown-El v. Delo*, 969 F.2d 644, 647 (8th Cir. 1992) ("We do not quarrel with the prison's need to segregate individual inmates from the general prison population for non-punitive reasons; for example ... where there is a threat to the safety and security of the institution"). If the conditions or restrictions are deemed punishment, the pretrial detainee is entitled to due process. When a detainee "is deprived of privileges or placed in a special confinement status in order to punish him for past misconduct, then due process requires some kind of hearing beforehand." *Id.* In *Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974), the Supreme Court held that pretrial detainees are entitled to an impartial due process hearing on disciplinary matters. *See also Hartsfield v. Nichols*, 511 F.3d 826, 830 (8th Cir. 2008). These procedures include written notice of the charges, a brief period to prepare, a written statement of the evidence relied on and reasons for the disciplinary action, and the ability for the inmate to call witnesses and present documentary evidence. *Id.*; *see also Dible v. Scholl*, 506 F.3d 1106, 1110 (8th Cir. 2007).

Pratt was charged with abuse of the grievance procedure, given a hearing, and originally

received a sanction of 30-days of tablet restriction. A short time later, Pratt indicates the sanction was changed to 30-days tablet restriction and 30-days in administrative segregation. According to Captain Mitcham, because the tablets were widely used in general population, the only way to enforce the 30-day tablet restriction was by housing Pratt in administrative segregation. Pratt testified that in administrative segregation he was in a one-man cell and on lock-down for 22 hours a day—whereas in general population you were only locked down between 10:30 pm and 4:30 am.

Although Pratt initially testified that he was hampered in presenting a defense at the hearing because of the unavailability of the kiosk at that time and he believed the sanction was a foregone conclusion, he later admitted he engaged in an abuse of the grievance procedure by using foul language. The disciplinary sanction was therefore meritorious. While Pratt testified Captain Mitcham could have restricted his access to tablets in other ways, Pratt does not dispute that the tablets were in general use throughout the pod. Pratt received all process that was due and Captain Mitcham was free to enforce the tablet restriction by placing Pratt in administrative segregation.

Captain Mitcham is entitled to summary judgment on this claim in both his individual and official capacities.

## IV.   CONCLUSION

For the foregoing reasons, Captain Mitcham's Motion for Summary Judgment (ECF No. 39) is **GRANTED and this case DISMISSED WITH PREJUDICE.**

DATED this 10th day of August 2023.

/s/ Barry A. Bryant
_____
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE